IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENG VONGLAHA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>JO ANNE BARNART,<br>Commissioner of Social Security,<br><br>　　　　　Defendant.<br>_____/ | CASE NO. CV-F-04-6705 REC LJO<br><br>**FINDINGS AND RECOMMENDATIONS RE MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION** (Doc. 11) |

Plaintiff Deng Vonglaha ("claimant") seeks judicial review of an administrative decision denying her claim for supplemental security income under the Social Security Act, Title XVI ("Act"). Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

Claimant filed her complaint on December 14, 2004 and her opening brief on July 14, 2005. The Commissioner filed her opposition to the appeal on September 13, 2005. Claimant did not file a reply brief.

## BACKGROUND

### Administrative Proceedings

Claimant filed an application for Supplemental Security Income under the Social Security Act on October 10, 2002. (Administrative Record "AR" 90-93.) She alleges a disability onset of June 2000 due to emotional distress and diabetes. (AR 90.) Claimant's application for benefits was denied and

denied upon reconsideration. (AR 74-77, 79-82.) Claimant's application was further denied by an Administrative Law Judge ("ALJ") in a decision issued on June 8, 2004. (AR 14-19.) The Appeals Council denied review. (AR 5-7.) Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

## Claimant's Background and Work Experience

Claimant was born in Laos and is unable to speak English. She last worked as a security guard. (AR 262.)

## Medical History

The pertinent medical history is summarized as follows.

Claimant was seen at University Medical Center in 2002 for diabetes management. (AR 151.) In August 2002, claimant reported that she mad not been taking diabetes medication regularly because she could not afford the medication, and it had been 3-4 years without it. (AR 149.) She reported being diagnosed with depression was given Prozac but was not taking it. (AR 149.) Her glucose was checked and she was set up with a physician for a physical. (AR 150.)

Claimant presented for a psychiatric evaluation by Frank Wilson, M.D. on January 11, 2003. (AR 152-155.) Claimant reported having diabetes and mental disorders. (AR 152.) She reported having memory problems, inability to sleep, back, leg and joint pain. (AR 152.) She reported watching TV, but does not do household chores, meal preparation or shopping. (AR 153.) On examination for intellectual functioning and sensorium, Dr. Wilson opined that claimant's errors in testing were due to cultural differences and not organic or intellectual deficits. (AR 154.) Dr. Wilson opined that there may have been some histrionic source of errors. (AR 154.) Abstract thinking was poor but articulation and communication with the interpreter was good; affect was flat and mood was depressed. (AR 154.) Dr. Wilson diagnosed depressive disorder, NOS, somatization disorder. (AR 154.) He assessed a global assessment of functioning as 60. (AR 154.) He opined that claimant is able to maintain attention and concentration and to carry out one and two step simple job instructions and would be able to relate and interact with coworkers, the general public and supervisors. (AR 154.)

Claimant presented for an internal medicine evaluation with Edward Mosley, M.D. on January 14, 2003. (AR 156-160.) Claimant complained of diabetes and multiple joint pain. (AR 156.) On

examination, claimant had no tenderness to palpation, straight leg raising was negative, no muscle spasm. (AR1 58.) She had a normal neurological examination, and gait was normal. (AR 159-160.) Dr. Mosley diagnosed that claimant was non-insulin dependent diabetes mellitus, multiple arthralgia. (AR 1609.) He opined that there were no objective findings on which to base restrictions of claimant's physical activities. (AR 160.)

State agency physician Archimedes Garcia, M.D. opined on February 20, 2003 that claimant's affective disorder and somatoform disorder were not severe impairments. (AR 165.) State agency physician Glenn Ikawa, M.D., concurred on May 7, 2003. (AR 204.)

State agency physician, James Glaser, M.D., opined that claimant has no severe physical impairment. (AR 167.)

Claimant was seen at Fresno County Mental Health from January 2002 to May 2004. (AR 168-203, 220-251.) On July 18, 2002, claimant was encouraged by staff to take medications as prescribed. (AR 187.) On September 6, 2002, a progress note for medication, the physician reported that medications were helping claimant and that she had no sleep or appetite problem, mood was better and affect was normal. (AR 183.) On December 5, 2002, in a staff note, claimant reported depressed mood, social isolation, anger and lack of interest in daily activities. (AR 176.) In a follow up visit with a physician on December 6, 2002, claimant reported medications were helping her sleep and have reduced depression. (AR 175.) In March 2003, claimant was medication noncompliant. (AR 169.) She was assisted with completing social security forms, general assistance forms and food stamps. (AR 172-73,181-183.) In September 2003, claimant reported sleeping better with medication but still depressed and angry. (AR 233.) In December 2003, claimant reported feeling tired most of the day, physical problems getting worse and feeling more depressed. (AR 228.) On February 9, 2004, a physician's review of claimant showed her with depressed mood, weeping, normal IQ and gave her a guarded prognosis. (AR 224.) In March 2004, claimant continued to report reduced energy, depressed mood, social isolation and anger. (AR 221.)

**Hearing Testimony**

Claimant went to school to learn English, three hours a day, three days a week. She last worked in 2000 for four months, two days a week. (AR 261.) She got fired from the security guard job. (AR

261.) She has a drivers' license but has not driven for 2 years. (AR 263-264.) She testified that she lives with her 34 year old son and her husband. (AR 265-266.) She is able to feed herself, comb her hair, take care of her personal hygiene, and dress herself. (AR 266.) She forgets to cook, so her son cooks. (AR 267.) In the last week before the hearing, she cooked two times, which is typical. (AR 267.) She goes grocery shopping with her son. (AR 267.) She has diabetes and follows a specific diet. (AR 268.) She also has depression and sees Dr. Sue once a month. (AR 269.) She follows the treatment plan/medication prescribed. (AR 269.) She does not go the grocery by herself because she is afraid. (AR 271.) She said she feels pain, is angry and depressed. (AR 271.)

## ALJ Findings

In his June 8, 2004 decision, the ALJ characterized the "primary issue" before him as whether claimant was disabled. (AR 14.) In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 18-19):

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
2. The claimant's depressive disorder, not otherwise specified (NOS) and somatization disorder are "severe" impairments, based on the requirements of the Regulations. 20 CFR §416.920.
3. These impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.
4. The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
5. The claimant has the residual functional capacity to work without exertional limitations. The claimant has the mental capacity to understand, remember, and carry out simple repetitive, one and two step instructions.
6. The claimant is unable to perform any of her past relevant work. 20 CFR §416.965.
7. The claimant is 59 years old, which is defined as an individual of advanced age. 20 CFR §416.963.

| | | |
|---|---|---|
| 8. | | The claimant is unable to communicate in English.  20 CFR §416.964. |
| 9. | | The claimant's work skills are not transferrable.  20 CFR §416.968. |
| 10. | | Considering the range of work at all levels that the claimant is still functionally capable of performing, in combination with her age, education, and work experience, and use in SSR 85-15 and section 204.00 of the Medical-Vocational Guidelines as a framework for decision-making, the claimant is not disabled. |
| 11. | | The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision.  20 CFR §416.920(g). |

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings).  Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Jones,* 760 F.2d at 995.  If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is:  (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant contends the ALJ's erred as follows: (1) inadequately considered the impairments, (2)

improperly developed the mental health record, and (3) improperly reviewed claimant's testimony.

## The Sequential Analysis

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled. 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further. 20 C.F.R. §§ 404.1520(a) and 416.920(a).  The five-step process is summarized as follows:

1. Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;

2. If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;

3. If the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations;[1] if the claimant does have such an impairment, the claimant is disabled and the analysis ends;[2]

4. If the claimant's impairment is not listed, determination of whether the impairment prevents the claimant from performing his or her past work;[3] if the impairment does not, the claimant is not presumed disabled and the analysis ends; and

5. If the impairment prevents the claimant from performing his or her past work,

---

[1] *See* 20 C.F.R. Part 404, Subpt. P, App. 1.

[2] If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990) (citing *Williams v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Key v. Heckler*, 754 F.2d 1545, 1548) (9th Cir. 1985.

[3] At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity. *Villa v. Heckler,* 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).

determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy;[4] if the claimant can, the claimant is not disabled and the analysis ends.

The claimant has the initial burden of proving the existence of a disability within the meaning of the Act. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case of disability by showing that a physical or mental impairment prevents him from engaging in his previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

In this case, claimant convinced the ALJ that she met the criteria in step one of the sequential analysis; that she has not been engaged in substantial gainful employment.

At step two, the ALJ must determine if the impairment is severe. The ALJ determined that the medical evidence establishes severe impairments of depressive disorder, not otherwise specified, and somatization disorder.

Claimant argues that the ALJ did not find any of her other impairments severe, diabetes mellitus, obesity, and arthritis. (Opening Brief p. 3.)

The Social Security regulations define severe impairment as an impairment which significantly limits a claimant's "ability to do basic work activities." 20 C.F.R. §§§§ 404.1521, 416.921; *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). "Basic work activities" are defined as including such capabilities as walking/sitting/standing/lifting, 20 C.F.R. § 404.1521(b)(1),(2); understanding, carrying out, and remembering simple instructions, 20 C.F.R. § 404.1521(b)(3); use of judgment, 20 C.F.R. § 404.1521(b)(4); responding appropriately to supervision, co-workers and usual work situations, 20 C.F.R. § 404.1521(b)(5); and dealing with changes in a routine work setting, 20 C.F.R. § 404.1521(b)(6). If the impairment does not significantly limit a claimant's physical or mental ability to do basic work activities, the impairment is not severe. *Bustamante v. Massanari*, 262 F.3d at 955.

The mere existence of an impairment is insufficient in and of itself to satisfy a showing that the impairment is so "severe" as to preclude substantial gainful employment. *Sample v. Schweiker*, 694 F.2d

---

[4] At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education and past work experience. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

639, 642-43 (9th Cir.1982). The step-two inquiry is a *de minimis* screening device to dispose of groundless claims. *See Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996). If the evidence presented by the claimant presents more than a "slight abnormality," the step-two requirement of "severe" is met, and the sequential evaluation process should continue. *See Smolen v. Chater,* 80 F.3d at 1290. Reasonable doubts on severity are to be resolved in favor of the claimant.

Pursuant to Social Security Rule 85-28:

> "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs. Examples of these are walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. Thus, these basic work factors are inherent in making a determination that an individual does not have a severe medical impairment."

SSR 85-28 further provides "At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities. If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed. "

Claimant argues that the record supports a finding of severity of her diabetes, citing AR 149, 150, 148, and 163. She argues that insulin was needed. (Opening Brief p. 3.) The Commissioner argues that this evidence is not relevant because it predates the applicable disability period.

A claimant must show she "was under a continuing disability while [her] application was pending;" that is, from and after October 10, 2002. *Nelson v. Sullivan*, 966 F.2d 363, 364 n.2 (8th Cir.1992) (citing 42 U.S.C. § 1382( c); 20 C.F.R. § 416.330. *See also Anderson v. Barnhart*, 2003 WL 22047389, *22 (N.D.Iowa 2003) (SSI benefits are not payable for any month prior to the month in which an application is filed, and an SSI claim remains in effect only through the decision of the ALJ.); *Santiago v. Massanari*, 2001 WL 1946240, *16 (S.D.N.Y. 2001). Thus, claimant must establish that she was disabled between October 10, 2002, the date of the application for supplemental security income, and June 8, 2004, the date of the Commissioner's final decision. *See e.g.*, *Bussi v. Barnhart*, 2003 WL 21283448, *1 (S.D.N.Y. 2003). The Commissioner correctly argues that records AR 148, 149,

and 150 are irrelevant to the ALJ's consideration.

The ALJ accepted the mental impairment as noted above as severe, but did not find that diabetes precluded her from basic work activities. The medical evidence, here, did not establish the existence of a severe medically determinable impairment. The ALJ identified all the pertinent medical history supportive of the finding of non-severity. The ALJ noted that claimant received care for diabetes through the Family Practice Clinic at University Medical Center. (AR 15.) He reviewed the treating records which showed that claimant did not have retinopathy, and although, she had multiple complaints of back and joint pain, did not have a diagnosis of neuropathy. (AR 15 (evidence citations omitted).) Indeed, the ALJ meticulously analyzed the objective medical evidence. (AR 15-16.) The ALJ relied upon the consultative examining opinion of Dr. Mosley and two state agency physicians who opined that claimant did not have a severe physical impairment. Where the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the commissioner. *Tackett v. Apfel,* 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Commissioner,* 169 F.3d 595, 599 (9th Cir. 1999). Thus, if the record as a whole offers substantial evidence to support the administrative findings, or if there is conflicting evidence that will support the findings, the finding of the Secretary is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Thus, the ALJ provided a comprehensive outline of the facts and clinical evidence. There was no error in the ALJ rejecting the severity of claimant's diabetes.[5]

Claimant argues that the ALJ should have considered her obesity.

An ALJ must consider obesity in determinations of disability. *Hammock v. Bowen*, 879 F.2d 498, 503-504 (9th Cir.1989) (en banc). See also Social Security Ruling 02-01P (discussing the evaluation of obesity in disability claims), superceding Social Security Ruling (No. 00-3p). SSR 02-01P states, that as the initial step in the sequential evaluation process, "when establishing the existence of obesity, we will generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build." (SSR 02-01P, para. 4.)

While the SSR states that the Social Security Administration will evaluate effects of obesity, it

---

[5] Claimant cites *Cox v. Califano*, 587 F.2d 988 (9th Cir. 1976) for the proposition that the ALJ was required to explain why her impairments were not severe. This case does not address the issue. The case dealt with a Step 5 issue.

remains claimant's burden to show that obesity has some effect on her functional capacity. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.) Claimant must come forward with some evidence of how her obesity limits her functioning. *Burch v. Barnhart*, 400 F.3d at 683 ("Even on appeal, Burch has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis.")

Neither any other treatment notes nor any other diagnoses addressed claimant's limitations due to obesity. Moreover, claimant did not present any testimony or other evidence at her hearing that her obesity impaired her ability to work. See Social Security Ruling 02-01P ("[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.")

### Develop Mental Health Record

Claimant argues that the only evidence to support that she can perform simple one and two step instructions is the consultative examination by Dr. Wilson, which itself is in error. She requests the case be remanded for further development of the mental impairment record.

The ALJ relied upon the consultative examination of Dr. Wilson and the review by the State agency physician. The ALJ reviewed all of the objective medical evidence in the record, including the records of University Medical Center. It is clear from these findings that the ALJ analyzed the records and medical opinions. The mental residual functional capacity is supported by the medical opinion Dr. Wilson. The opinion of a reviewing physician and the ALJ's conducting an independent analysis of the medical evidence may constitute substantial evidence. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

Claimant argues that the treatment notes record two additional diagnoses that the ALJ did not find claimant suffered from, "PTSD and MDD", citing AR 224 and 230. (Opening Brief p.3:26-27.) Claimant also argues that her GAF was recorded at only 50 with substantial functional loss, citing AR

189, 243, and 249.  (Opening Brief p.4:1-2.)

Here, the ALJ reviewed all of the treatment records from the Fresno County Mental Health Department, noted the complaints, diagnoses, and medications. (AR 16.)  In particular, the ALJ addressed the diagnoses argued by claimant: "However, in November 2003 the claimant denied any further improvement, and in February 2004, with a new psychiatrist, wept continually and was diagnosed with post-traumatic stress disorder.  The treatment notes do not reflect the basis for the diagnosis." (AR 16, evidence citations omitted.) Thus, the ALJ addressed the specific records and diagnoses argued by claimant.  The ALJ stated specific reasons to reject the diagnosis.

In addition, the ALJ was entitled to reject the Mental Health case worker's opinions, cited at AR 189, 243 and 249.  The opinions noted on these pages of the Record are not by an acceptable medical source.

The Social Security Regulations list persons who qualify as "acceptable medical sources" and include persons with doctorate degrees or M.D. degrees. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (listing acceptable medical sources); *see Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir.) (noting that "[a]cceptable medical sources specifically include licensed physicians and *licensed psychologists"* ) (emphasis added), *cert. denied*, 519 U.S. 881, 117 S.Ct. 209, 136 L.Ed.2d 144 (1996); see also *Jamerson v. Chater,* 112 F.3d 1064, 1067 (9th Cir.1997) (refusing to consider a special education teacher without a doctoral degree to be an "acceptable medical source").  Under the Social Security Regulations, the case worker is not an "acceptable medical source." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  Instead, she is considered to be an "other source," whose opinion the ALJ may give less weight than that of an acceptable medical source. 20 C.F.R. §§ 404.1513(d), 416.913(d).

While claimant argues that the ALJ erred in failing to develop the Record, the Record shows that the Commissioner obtained the consultative psychiatric examination, obtained the treatment records of all of the doctors, clinics and other treatment sources identified by claimant.  The ALJ reviewed each of the treatment records, summarized the records and the doctor's opinions.  The ALJ considered and relied upon the January 2003 psychiatric evaluation and the review by the State agency physicians.  The Record is fully developed.

**Claimant's Testimony**

Claimant argues that the ALJ did not accurately set out the facts or assess her credibility.

A claimant's credibility generally becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective pain statements may tell of greater limitations than can medical evidence alone. Social Security Ruling (SSR) 96-7p (1996); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). For this reason, the ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence. *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir.1989). To determine whether the claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ "may disregard unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements." *Tonapetyan v. Halter*, 242 F.3d at 1147, 1148. An ALJ may consider the following factors to determine the credibility of a claimant's allegations of disabling pain:

(1)   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2)   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3)   Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4)   Treatment, other than medication, for relief of pain;

(5)   Functional restrictions;

(6)   Claimant's daily activities;

(7)   Unexplained, or inadequately explained, failure to seek treatment or follow up a prescribed course of treatment; and

(8)     Ordinary techniques to test a claimant's credibility.

*Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).

The ALJ partially accepted claimant's complaints of pain, but found that the claimant's subjective complaints were not entirely credible. (AR 17.) The ALJ noted "that the claimant takes over-the-counter medications for her pain symptoms, which suggests that they are not severe or limiting." (AR 17). Conservative, effective medical treatment is a valid basis for discrediting allegations of excess pain and other disabling symptoms. *See Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (ALJ properly discredited subjective complaints based on conservative, effective treatment).

The ALJ also noted an inconsistency in claimant's testimony. The ALJ noted that "[a]lthough the claimant testified that she is compliant with her medications, she also testified that she does stick with her diet. Further, the Mental Health records suggest that the claimant does not always take Zoloft as prescribed, since in March 2003 she had a large number of pills left from a December 2002 refill (Exhibit B-6F, p. 2)" (AR 17). Similarly, the ALJ noted other inconsistencies in the Record:

> "For example, she told both consultative examiners that she never worked outside the home, but on her application showed that she worked in the family store through 1996, and worked as a security guard in 1998, 1999, and 2000." (AR 18.)

*See Tidwell v. Apfel*, 161 F.3d at 601 (ALJ properly discredited subjective complaints based on claimant's prior inconsistent statements).

The ALJ also noted that claimant testimony as to her limited household duties was not credible:

> "The claimant has testified to a limited range of household activities, but also testified that her husband is disabled from a stroke and her son works fulltime; these facts suggest that the claimant is exaggerating her helplessness, since during the day she would be the sole caretaker of her husband." (AR 17).

*See Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002) (ALJ may consider inconsistencies in and among claimant's testimony, conduct, daily activities, and third party statements).

The ALJ noted psychiatrist Dr. Wilson "observed a histrionic element in the claimant's responses, which also supports the conclusion that she was exaggerating her symptoms." (AR 18.)

The ALJ also noted that her poor work history weighs against claimant's credibility. (AR

18.) *See Thomas v. Barnhart*, 278 F.3d at 958-959 (ALJ may consider inconsistencies between claimant's testimony and work record).

Here, the ALJ considered numerous factors in partially discrediting claimant's testimony. While the ALJ did not specifically identify each of the factors as he discussed them in his opinion, he nonetheless, considered the factors. "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989); *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988). The Court does not find error.

Claimant argues that she was too poor to obtain medication on a regular basis for which the ALJ penalized her.

Although the Ninth Circuit has held that "an unexplained, or inadequately explained, failure to seek treatment ... can cast doubt on the sincerity of [a] claimant's pain testimony," *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989), the Ninth Circuit has proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir.1996); *accord Gamble v. Chater,* 68 F.3d 319, 322 (9th Cir.1995) ("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him."); *Regennitter v. Commissioner of the Social Security Administration,* 166 F.3d 1294, 1297 (9th Cir.1999) (claimant compensated for inability to afford prescription pain medication by overdosing on large quantities of over-the-counter pain medication).

The ALJ, however, did not reject her subjective complaints on the basis that she did not seek treatment:

> "The records shows that the claimant takes over-the-counter medications for her pain symptoms, which suggests that they are not severe or limiting. Although the claimant testified that she is compliant with her medications, she also testified that she does not stick with her diet. Further the Mental Health records suggest that the claimant does not always take Zoloft as prescribed, since in March 2003 she had a large number of pills left from a December 2002 refill." (AR 17.)

The only statement by the ALJ that he considered her treatment as obtaining "conservative treatment" is:

14

> "The records shows that the claimant takes over-the-counter medications for her pain symptoms, which suggest that they are not severe or limited." (AR 17.)

The ALJ, however, also noted her prescription medication for her mental impairments and noted that she testified she was compliant with her medication, except for her diet. (AR 17.) The ALJ further linked the relief claimant received from medications when she was taking the medications:

> "The degree of psychological impairment alleged is contradicted by the psychiatric record, which shows that by December 2002 the claimant's symptoms were substantially relieved with medication." (AR 18.)

Thus, the ALJ considered the import of medications when claimant was taking her medications.

Claimant also argues that "[h]er testimony was ignored in the decision for the most part. Much of it was misstated." (Opening brief, p.4-5.)

Claimant's brief fails to develop these points and the Court will not speculate on them. When an ALJ has made specific findings to justify a decision to disbelieve subjective complaints and the findings are supported by substantial evidence, a court may not second guess the decision. *Fair*, 885 F.2d at 604.

Claimant argues that the ALJ failed to review all seven criteria as stated in SSR 96-7p.

Claimant has not cited to any authority, aside from SSR 96-7p, for the proposition that the ALJ must consider *all* of the 96-7p factors. To the contrary, the Ninth Circuit has upheld ALJ's findings on less than an evaluation of all of the SSR 96-7p listed factors. "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in [his] testimony. The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147, 1148 (9th Cir. 2001) (upholding adverse credibility finding where ALJ cited claimant's "lack of cooperation at the hearing, her presentation at the hearing, her tendency to exaggerate, her inconsistent statements, and her lack of cooperation during consultative examinations"); *Orteza v. Shalala*, 50 F.3d 748 (9th Cir.1995) (upholding adverse credibility finding where ALJ identified treating physician's statement as to lack of objective evidence, pointing to the scope of activities identified in claimant's initial application, no medication

side effects or prescription medicine.); *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999) (upholding adverse credibility finding on claimant's inconsistent testimony with that of treating physician's notes, minimal conservative treatment for alleged incapacitating pain).

## CONCLUSION

The Court RECOMMENDS that the District Court issue an order as follows:

The Court finds no error in the ALJ's analysis. As such, the ALJ's decision is supported by substantial evidence in the Record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Deng Vonglaha.

These findings and recommendations are submitted to United States District Judge Robert E. Coyle pursuant to 28 U.S.C. § 636(b)(l) and this Court's Local Rule 72-304. Within 10 days of the date of service of these findings and recommendations, plaintiff may file written objections with the Court and serve a copy on all parties and the Magistrate Judge in compliance with this Court's Local Rule 72-304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   December 22, 2005**            **/s/ Lawrence J. O'Neill**
b9ed48                                              UNITED STATES MAGISTRATE JUDGE